UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) | Criminal Action No. 5: 17-065-DCR |
| V. | ) | |
| MARION L. BROWN, III, | ) | **MEMORANDUM OPINION AND ORDER** |
| Defendant. | ) | |

\*\*\*  \*\*\*  \*\*\*  \*\*\*

Defendant Marion Brown filed a motion to withdraw his guilty plea on December 29, 2017. [Record No. 40] The Court orally denied Brown's motion prior to sentencing him on January 12, 2018. This Memorandum Opinion and Order supplements the Court's oral ruling.

**I.**

A federal grand jury returned an indictment on May 11, 2017, charging Brown with three drug-trafficking offenses and one firearms offense. [Record No. 7] The Court appointed counsel for Brown under the Criminal Justice Act and scheduled a jury trial for July 17, 2017. Brown subsequently retained counsel, however, and moved to continue the trial. [Record No. 21] That motion was granted and, following a subsequent request to continue the trial, Brown filed a motion for rearraignment on July 25, 2017. [Record No. 25]

Brown pled guilty to Counts 2 and 4 of the indictment on July 28, 2017. [Record Nos. 27, 38] Count 2 charged that he knowingly and intentionally distributed fentanyl, the use of which resulted in serious bodily injury to a victim, in violation of 21 U.S.C. § 841(a)(1). Count 4 charged that he possessed various specified firearms after having been convicted of a felony,

in violation of 18 U.S.C. § 922(g)(1).  Brown's sentencing hearing was originally scheduled for November 17, 2017.

Brown was detained at the Grayson County Detention Center following entry of his guilty plea.  He attempted to escape from that facility on September 1, 2017.  [Record No. 41-1] Following the escape attempt, counsel visited Brown to discuss the presentence report and other sentencing issues.[1]  [Record No. 39, p. 6-7]  The PSR indicated that Brown had lost acceptance-of-responsibility credit based on the escape attempt and recommended a Sentencing Guidelines range of life imprisonment.  At some point during the visit, Brown notified counsel that he wished to withdraw his guilty plea.  *Id.* at p. 7.  Counsel apparently advised him against making such a motion but, after the visit, Brown returned a signed email to counsel affirming that he wished to withdraw his plea.  *Id.* at pp. 7-8.  Counsel again met with Brown on November 16, 2017, to inquire whether he was certain regarding the decision.  *Id.* at p. 8.  Brown again affirmed that he wished to withdraw his plea.  *Id.* at p. 8.

During the hearing on November 17, 2017, Brown's former attorneys advised the Court of Brown's desire to withdraw his guilty plea.  Counsel was granted leave to withdraw and Brown was appointed new counsel under the CJA.  The sentencing hearing was rescheduled for January 12, 2018.  Brown filed the instant motion on December 29, 2017.

**II.**

As an initial matter, the Court recognizes that a defendant does not have an absolute right to withdraw a guilty plea and bears the burden of proving that he is entitled to do so. *United States v. Ellis*, 470 F.3d 275, 280 (6th Cir. 2006) (citing *United States v. Mader*, 251

---

[1] The Presentence Report was prepared on October 12, 2017.

F.3d 1099, 1105 (6th Cir. 2001)). Rule 11(d)(2)(B) of the Federal Rules of Criminal Procedure provides that a defendant may withdraw a guilty plea after the court accepts the plea, but before it imposes a sentence when the defendant can show a fair and just reason for requesting the withdrawal. This rule is designed so that a "hastily entered plea made with an unsure heart and confused mind" may be undone. *United States v. Alexander*, 948 F.2d 1002, 1004 (6th Cir. 1991). However, the rule does not permit a defendant to "make a tactical decision to enter a plea, wait several weeks, and then obtain a withdrawal if he believes he made a bad choice in pleading guilty." *Id.*

The Court considers a number of factors to determine whether the defendant has shown a fair and just reason for requesting withdrawal. *United States v. Haygood*, 549 F.3d 1049, 1052 (6th Cir. 2008). These factors include:

> (1) the amount of time that elapsed between the plea and the motion to withdraw it; (2) the presence (or absence) of a valid reason for the failure to move for withdrawal earlier in the proceedings; (3) whether the defendant has asserted or maintained his innocence; (4) the circumstances underlying the entry of the guilty plea; (5) the defendant's nature and background; (6) the degree to which the defendant has had prior experience with the criminal justice system; and (7) potential prejudice to the government if the motion to withdraw is granted.

*Id.* (citing *United States v. Bashara*, 27 F.3d 1174, 1181 (6th Cir. 1994)). No one factor controls and the relevance of each varies based on the "circumstances surrounding the original entrance of the plea as well as the motion to withdraw." *Id.* (citations omitted).

## III.

Much of Brown's argument regarding the first two factors concerns the conduct of his

former attorneys.² It is unclear precisely when Brown first told his former attorneys that he wanted to withdraw his guilty plea but, based on counsel's undisputed statements during the November 17, 2017 hearing, it was sometime after the PSR was issued on October 12, 2017. [Record No. 39, p. 6-7] Brown's attorneys did not immediately file a motion to withdraw. Instead, it appears that Brown's attorneys researched the issue and then counseled him against making such a motion before eventually notifying the Court of Brown's wishes in November 2017.

Assuming, *arguendo*, that Brown may place some blame for the delay on his former attorneys, there is no suggestion that he informed his attorneys of his desire to withdraw his guilty plea until at least 76 days after entry of the plea. Numerous decisions have found that delays of this magnitude weigh against granting the motion to withdraw. The 112-day period in which the Court was not notified is even more substantial, and the defendant has not provided a sufficient explanation to excuse the delay. *See United States v. Durham*, 178 F.3d 796, 798-99 (6th Cir. 1999) (when defendant waited 77 days to file a motion to withdraw, the strongest factor supporting the district court's denial of the motion was the interval between the plea and the filing of the motion); *United States v. Spencer*, 836 F.2d 236, 239-40 (6th Cir. 1987) (refusing to allow a defendant to withdraw his guilty plea when he waited five weeks after entry to file motion).

Brown contends that the 112-day period should not weigh against him because he had difficulty "effectively communicating the issues he had with the plea agreement with his prior

---

² Although previous counsel advised the Court of Brown's desire to withdraw his guilty plea on November 17, 2017, the motion to withdraw was not actually filed until 154 days after entry of Brown's guilty plea.

counsel." He cites "substantial emotional problems" including suicidal ideations which were conveyed to the staff at the Grayson County Detention Center. [Record No. 40, p. 6] An emotional response might be expected in light of the fact that Brown was facing a lengthy prison sentence. However, there is no indication that any overt suicide attempt was made. Brown met with his former attorneys on multiple occasions via Skype before notifying them of his desire to withdraw his plea. [Record No. 39, pp. 6-7] His attorneys did not observe any behavior that they believed warranted a mental evaluation. *Id.* at p. 5. And it appears that during this same time period, Brown had the presence of mind to orchestrate an escape attempt along with another individual.[3] [Record No. 41-1]

Additionally, Detective Reid Bowles of the Lexington Police Department provided testimony on January 12, 2018, regarding Brown's mental state between the time of his arrest and the entry of his plea agreement. Law enforcement met with Brown on during informal discussions and a formal proffer session. There is no indication based upon Bowles' testimony that Brown was under any mental stress at that time. Instead, he was actively attempting to negotiate a more successful deal by way of a reduced sentence based upon cooperation which did not pan out.

Next, Brown asserts that he maintained his innocence by repeatedly telling his former attorney that the overdose victim involved in Count 2 did not obtain the controlled substances from him. However, the plea agreement provides that Brown *did* supply the drugs to the victim on that occasion and he admitted it in open court during his rearraignment on July 28, 2017.

---

[3] Brown claims that the delay also is attributable to his placement in segregation after the alleged escape attempt on September 1, 2017. However, he does not claim that he was not permitted to communicate with his attorneys during his time in segregation.

[Record No. 38, p. 28] Specifically, he stated that he supplied "Bri" with drugs on or around March 29, 2017, as alleged in the Indictment. *Id.* He further acknowledged that the drugs he supplied to Bri contained fentanyl and that their use resulted in serious bodily injury to her. *Id.* at p. 29. Brown acknowledged that the government could prove this and stated that he was pleading guilty because he was guilty. *Id.* at pp. 29-30. Accordingly, he has not maintained his innocence and this factor weighs against granting the motion to withdraw.

The circumstances surrounding Brown's entry of the guilty plea also weigh strongly in favor of denying the motion to withdraw. Contrary to Brown's assertions, there is no indication that his plea was not knowing and voluntary. *See Baker v. United States*, 781 F.2d 85, 88 (6th Cir. 1986) (citing *Brady v. United States*, 392 U.S. 742, 747 (1970)). This Court examined Brown regarding his competence to plead, his understanding of the consequences of his actions, and his voluntariness before accepting the plea as required by Rule 11(b) of the Federal Rules of Criminal Procedure. Specifically, the Court questioned Brown regarding his education, employment, mental health, and past substance abuse. Brown was able to understand the Court's questions and responded appropriately, demonstrating his competence to enter a plea in this matter. He reported that he had reviewed the plea agreement with counsel and that he understood it. [Record No. 38, p. 10] Further, he advised the Court that no one had threatened or forced him to enter a guilty plea. *Id.* at p. 14.

In short, Brown's current assertion that he did not distribute the controlled substance which led to the victim's overdose cannot erase his sworn testimony to the contrary. *See Blackledge v. Allison*, 431 U.S. 63 (1977); *McAdoo v. Elo*, 365 F.3d 487, 496 (6th Cir. 2004) ("A movant is bound by his testimony under oath at the plea hearing if the trial court scrupulously followed the procedures under Rule 11."). Additionally, Brown has not

established the materiality of any alleged "issues" with the plea agreement. He argues that the plea agreement implies that the overdose victim identified him as her source of supply while in the emergency room on March 29, 2017, while the victim did not actually identify him as the source of supply until later. But the plea agreement does not state explicitly when or where the victim named Brown as the source of supply. Regardless, the time and place that the victim named Brown as the source of supply for the drugs resulting in her overdose is not a material portion of the plea agreement. Brown did not object to this alleged discrepancy prior to entering his guilty plea and it is not a basis for withdrawing the plea.

Brown noted during oral argument on the motion to withdraw that the first paragraph of the plea agreement cites both 21 U.S.C. §§ 841(a)(1) and 846 as the relevant provisions underpinning Count 2. However, the United States described the reference to § 846 as "surplusage." Indeed, the errant reference to § 846 is innocuous, as there is no other reference to conspiracy in the plea agreement and the factual basis clearly describes violations of § 841(a)(1), as alleged in Count 2.

Brown also argues that, despite his protestations of innocence, his former counsel advised him that he likely would be convicted of the crimes charged given the evidence against him. The clear suggestion is that former counsel coerced him into pleading guilty, but Brown advised the Court during his rearraignment that no one had forced him to enter a guilty plea. Attorneys are obligated to provide opinions regarding the strength of the government's case, the likelihood of a successful defense, and the wisdom of any desired course of action. *See Smith v. United States*, 348 F.3d 545, 553 (6th Cir. 2003). Given the evidence likely to be introduced in the case, there is no indication that Brown's former attorneys' advice was

unreasonable. Further, Brown advised the Court during the rearraignment hearing that he was satisfied with the advice and representation that counsel had provided. [Record No. 38, p. 9]

Finally, Brown's background and experience with the criminal justice system do not weigh in favor of allowing him to withdraw his plea. There is some suggestion that Brown attempted suicide by shooting himself in 2007, but he advised the Court during rearraignment that he had never been treated for any type of mental illness or mental condition. *Id.* at p. 5. He testified that he dropped out of school during the ninth grade, but that he could read and write. *Id.*

The competency standard for pleading guilty is the same as that for standing trial— "whether the defendant has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and has a rational as well as factual understanding of the proceedings against him." *Godinez v. Moran*, 509 U.S. 389, 397 (1993); *United States v. Hawkins*, 8 F. App'x 332, 334 (6th Cir. 2001). Although Brown has a limited education, the Court determined through its Rule 11 colloquy that he was competent to enter a guilty plea. The transcript of rearraignment proceedings reveals that Brown was attentive during the proceedings and expressed understanding after asking a question regarding Court's ability to impose a sentence below the statutory mandatory minimum upon the government's motion. [Record No. 38, pp. 19-20]

Brown's extensive criminal history also weighs against granting his motion. He has accumulated a record that includes numerous felony drug convictions and other serious offenses. Brown is intimately familiar with the criminal justice system and is aware of the ramifications of entering a guilty plea.

Considering all of the above factors, there is simply no indication that Brown's decision to enter into a guilty plea was a hasty decision made with an "unsure heart and confused mind." *See Alexander*, 948 F.2d at 1004. The record indicates that Brown was considering the plea agreement as early as July 3, 2017. [Record No. 23] Certainly, the alleged reasons for Brown's decision to withdraw his plea would have been known to him within days of entering it. Instead, it appears that Brown discussed the sentencing realities with his former attorneys and decided that pleading guilty was the wrong decision. This is not a valid basis for withdrawing a guilty plea. *See Alexander*, 948 F.2d at 1004.

Finally, Brown argues that the United States will not be prejudiced if he is permitted to withdraw his plea. However, the government is not required to show that it would be prejudiced by withdrawal of the plea unless and until the defendant advances a fair and just reason for allowing withdrawal. *United States v. Wynn*, 663 F.3d 847, 850 (6th Cir. 2011). Accordingly, no showing of prejudice is required.

**IV.**

Having failed to negotiate a possible reduction of his sentence for cooperation, Brown attempted to avoid the consequences of his criminal drug activity by attempting to escape from custody prior to his sentencing hearing. That made matters worse for Brown because those actions have the effect of increasing his guideline range for incarceration under the United States Sentencing Guidelines. That intentional conduct, however, does not provide Brown with a legitimate reason for withdrawing from his negotiated Plea Agreement with the government. Based on the foregoing analysis, and as explained during the hearing held this date, it is hereby

**ORDERED** that Defendant Marion Brown's motion to withdraw his guilty plea [Record No. 40] is **DENIED**.

This 12th day of January, 2018.

Signed By:
*Danny C. Reeves* DCR
United States District Judge