UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

CRIMINAL ACTION NO. 5:17-CR-65-DCR-1
(Related Civil Action No. 5:19-CV-290-DCR)

UNITED STATES OF AMERICA,                                    PLAINTIFF,

V.                          **RECOMMENDED DISPOSITION**

MARION LEAVES BROWN III,                                    DEFENDANT.

**\*\*\* \*\*\* \*\*\* \*\*\***

Marion Leaves Brown, III, proceeding *pro se*, brings this action pursuant to 28 U.S.C. § 2255, seeking to vacate, set aside, or correct his sentence of 480 months. [R. 69]. Having been fully briefed, this matter is now ripe for review. This Court recognizes that Brown is proceeding *pro se* and construes his motion more leniently. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Castro v. United States*, 540 U.S. 375, 381-83 (2003). Nevertheless, due to the following procedural and substantive deficiencies in his motion to vacate, Brown fails to establish that he is entitled to relief under 28 U.S.C. § 2255. Therefore, it is RECOMMENDED that Brown's motion to vacate be DENIED.

## I.      FACTS AND PROCEDURAL HISTORY

While on appeal from the District Court's denial of Brown's motion to withdraw his guilty plea, the Sixth Circuit recounted the facts of this case as follows:

> On March 29, 2017, a woman in Lexington, Kentucky, overdosed on drugs. First responders with the Lexington Fire Department revived her by applying two doses of Naloxone, a drug that reverses the potentially lethal depression of the central nervous system and respiratory system caused by opioids. Laboratory tests revealed that the drug that caused her overdose consisted of both heroin and fentanyl. The overdose victim told police originally that another woman sold her the drugs, but several days later the victim admitted that she had lied and told police that Marion Brown III ("Brown") was her source. With the victim's cooperation, police recorded subsequent conversations she had with Brown setting up another drug purchase. While Brown "cautioned her about overdosing," he nonetheless sold her fentanyl.

Police executed a search warrant at Brown's apartment. During an interview with police, Brown admitted that he had been selling narcotics. He did not admit, however, that he sold the drugs that caused the woman's overdose. Brown also indicated that he was willing to assist with police investigations to get a more lenient sentence.

On May 11, 2017, the grand jury charged Brown with four criminal counts:

> (1) conspiracy to distribute controlled substances containing a detectable amount of fentanyl, heroin, and/or 6-monoacetylmorphine, in violation of 21 U.S.C. § 841 and 21 U.S.C. § 846;
> (2) distribution of a mixture or substance containing a detectable amount of fentanyl, the use of which results in serious bodily injury, in violation of 21 U.S.C. § 841(a)(1);
> (3) distribution of a mixture or substance containing a detectable amount of fentanyl, in violation of 21 U.S.C. § 841(a)(1); and
> (4) being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1).

After retaining counsel, Brown negotiated a Plea Agreement in which he pleaded guilty to the second and fourth counts. The Plea Agreement states that Brown "knowingly and intentionally distributed a mixture or substance containing a detectable amount of fentanyl . . . [and that] the use of the controlled substance distributed by [Brown] resulted in serious bodily injury to an individual." The factual basis for the offenses laid out in the Plea Agreement states that the female overdose victim identified Brown as the source of her drugs. In exchange for his guilty plea, prosecutors agreed that the United States would move at sentencing for a reduction of three points in his total advisory offense level (45) to reflect his willingness to accept responsibility for his criminal conduct. That agreement was contingent on Brown's not committing another crime, obstructing justice, or violating a court order.

At Brown's Rearraignment Hearing on July 28, 2017, before accepting his guilty plea, the district court asked Brown: "Have you ever been treated or hospitalized for any type of a mental illness or a mental condition?" Brown answered, "No, sir." Brown said that he understood the terms of the Plea Agreement and that no one had coerced him to plead guilty. Brown admitted that he supplied the overdose victim with drugs containing fentanyl and that the fentanyl-laced drugs he distributed to her resulted in the serious bodily injury she suffered.

On September 2, 2017, before Brown was sentenced, he unsuccessfully attempted to escape from jail. On November 16, one day before Brown's sentencing hearing, his retained counsel informed the court that Brown wished to withdraw his guilty plea. Brown's retained counsel understood that, as a consequence of his attempted escape, Brown no longer qualified for the three point "acceptance of responsibility" reduction. Though Brown's retained counsel advised him against doing so, Brown insisted on moving to withdraw his plea. His counsel notified the court of Brown's wishes and also moved to withdraw from the case. The court granted counsel's motion to withdraw.

With new appointed counsel, Brown moved to withdraw his guilty plea at the rescheduled sentencing hearing on December 29, 2017. The district court denied his motion, finding, after considering the record under the relevant factors, that Brown had

not made the requisite showing for withdrawing a guilty plea: a fair and just reason for doing so. The district court sentenced Brown to 480 months imprisonment. Brown appealed, challenging only the denial of his motion to withdraw his guilty plea.

[R. 66 at 380-82]; *United States v. Brown*, 752 F. App'x. 309, 311-12 (6th Cir. 2018).

Brown's sole argument on appeal was that the District Court erred by failing to allow him to withdraw his guilty plea. [R. 69 at 397]. The Sixth Circuit affirmed the District Court, concluding that Brown did not show a fair and just reason to allow him to withdraw his guilty plea. [R. 66 at 388]; *Brown*, 752 F. App'x. at 315. Brown concedes that he did not seek further review from the United States Supreme Court or file any other motions, petitions, or applications concerning his judgment. [R. 66 at 388].

Following the denial of his request to withdraw his guilty plea, Brown now seeks a collateral attack of his sentence under Count two by alleging ineffective assistance of counsel against his former attorney, Jerry Wright. [R. 69]. Specifically, Brown contests Wright's effectiveness at representing and advising him against the government's charge of distribution of a mixture or substance containing a detectable amount of fentanyl, which resulted in serious bodily injury to the victim. [*Id.*] Wright was initially retained as Brown's counsel on May 22, 2017. [R. 69-1].

Brown timely filed this instant action eight months following the date of the judgment. [R. 69 at 404]. In his motion to vacate, Brown raises three broad grounds to support his request to vacate his sentence pursuant to Section 2255: (1) ineffective assistance of counsel surrounding the plea agreement; (2) prosecutorial misconduct; and (3) ineffective assistance of counsel for failure to investigate prior convictions to establish that he is not a career criminal offender. [R. 69 at 396-401]. Brown argues broadly that the government could not prove that the drugs he sold caused the victim, Breann Strickler, to overdose. [*Id.*] Therefore, Brown asks this Court to vacate the sentence enhancement and re-sentence him as to the lesser-included offense of possession.

## II.    STANDARD OF REVIEW

A motion brought pursuant to 28 U.S.C. § 2255 is a collateral attack on a conviction. Pursuant to 28 U.S.C. § 2255, a prisoner has a statutory right to collaterally attack his conviction or sentence. *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999). For a federal prisoner to prevail on such a claim, he bears the burden of showing that: (1) his conviction resulted from an error of constitutional magnitude; (2) his sentence was imposed outside the statutory limits; or (3) an error of fact or law occurred that was so fundamental as to render the entire proceedings invalid. *Mallett v. United States*, 334 F.3d 491, 496-97 (6th Cir. 2003), cert. denied, 540 U.S. 879 (2003). If the prisoner alleges constitutional error, he must establish by a preponderance of the evidence that the error "had a substantial and injurious effect or influence on the proceedings." *Watson*, 165 F.3d at 488 (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993)). Alternatively, if he alleges a non-constitutional error, he must establish "a fundamental defect which inherently results in a complete miscarriage of justice . . . an error so egregious that it amounts to a violation of due process. *Watson*, 165 F.3d at 488 (citing *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990).

## III.    ANALYSIS

### A. Valid Waiver and Procedural Default to Claims Other Than Ineffective Assistance of Counsel

The United States argues that any sufficiency of the evidence claims or assertions of prosecutorial misconduct in Brown's petition were (1) waived by Brown pursuant to the plea agreement and (2) barred as procedurally defaulted. [R. 73 at 503-05]. On July 28, 2017, a plea agreement was entered into the record. [R. 28]. Thereafter, the only issue Brown raised on appeal was whether the District Court erred when it denied his request to withdraw his plea following his unsuccessful attempt to escape prison, which led to the Government withdrawing its agreement to

move for a three-point reduction at sentencing. *Brown*, 752 F. App'x. at 311-12. Nevertheless, according to Brown, the United States Prosecutor engaged in prosecutorial misconduct because they knew or should have known the drugs sold to the victim by Brown were not the same drugs that were found in her system. [R. 69-1]. Brown argues that the Prosecutor knew that Strickler "had lied and brought false charges anyways" or that the government did not actually investigate the evidence in this case, in violation of the its ethical duty. [*Id.*]

First, the United States argues that Brown cannot raise a sufficiency of the evidence or prosecutorial misconduct argument in his motion to vacate in his second ground because the plea agreement explicitly provides that Brown:

> waives the right to appeal the guilty plea and conviction. [Brown] also waives the right to appeal any determination made by the Court at sentencing with the sole exception that [Brown] may appeal any aspect of the sentence if the length of the term of imprisonment exceeds the advisory sentencing guideline range as determined by the Court at sentencing. *Except for claims of ineffective assistance of counsel, [Brown] also waives the right to attack collaterally the guilty plea, conviction, and sentence.*

[R. at 73 at 503]; *see also* [R. 28 at ¶ 8] (emphasis added). The plea agreement further provides that Brown agreed to enter "a guilty plea to count 2, distribution of a mixture or substance containing a detectable amount of fentanyl, the use of which resulted in serious bodily injury. . ." [R. 28 at ¶ 1]. Further, the plea agreement states that the essential elements of count 2 are:

> (a) that the Defendant knowingly and intentionally distributed a mixture or substance containing a detectable amount of fentanyl, a Schedule II controlled substance, and
> (b) the use of the controlled substance distributed by the Defendant resulted in serious bodily injury to an individual.

[R. 28 at ¶ 2a]. Pursuant to the Presentence Investigation Report ("PSR"), Brown's base offense level for count 2 was 45 and his criminal history category was VI, with a recommended Guideline sentence of life imprisonment. [R. 51 at 238, 249].

If done knowingly and voluntarily, a criminal defendant may, by the terms of the plea agreement, waive his right to file a direct appeal and his right to collaterally attack his conviction and sentence under Section 2255. *Davila v. United States*, 258 F.3d 448, 450-51 (6th Cir. 2001). A waiver is a "relinquishment or abandonment of a known right." *United States v. Olano*, 507 U.S. 725, 733 (1993). Even a constitutional right may be waived, if the defendant did so knowingly and voluntarily when entering into a plea agreement. *United States v. Calderon*, 388 F.3d 197, 199 (6th Cir. 2004). A waiver in a plea agreement is considered knowing and voluntary if the defendant testifies that his guilty plea was not coerced and that he reviewed and understood the agreement's terms. *Davila*, 258 F.3d at 451.

A court is not required to fully review the merits of a § 2255 motion if the movant's claim that his plea was invalid has "no basis" in the record. *United States v. Thornton*, 2007 WL 1741780, at *7 (E.D. Ky. May 25, 2007) (citing *Acosta*, 480 F.3d at 421). If the movant's claim that his plea was not knowing or voluntary has no legal or factual basis, "the Court may then enforce the waiver provision and preclude further review of these arguments." *Id.* Only where a movant "articulate[s] a basis for attacking the validity of his plea" may he escape the consequences of the waiver provision. *In re Acosta*, 480 F.3d 421, 422 (6th Cir. 2007). In other words, a movant who has otherwise waived the right to collaterally attack his conviction and sentence, must "raise[] a challenge that goes to the validity of his waiver, such a claim that the waiver was involuntary or the product of ineffective assistance of counsel." *Id.*

The facts indicate that the broad waiver precludes any argument of prosecutorial misconduct in the instant action. In his written agreement, Brown expressly waived his right to appeal and the right to collaterally attack his guilty plea, conviction, and sentence. [R. 28 at ¶ 8]. The waiver was unconditional and contained no exceptions. [*Id.*] The facts also indicate that

Brown's plea to Count two was made knowingly and voluntarily. The United States District Judge conducted a rearraignment of Brown where he swore under oath that he had reviewed his plea agreement and understood the terms. [R. 38 at 116]. The District Judge also reviewed the contents of the collateral attack waiver with Brown at his rearraignment and specifically advised him of his rights as required by Federal Rules of Criminal Procedure 11. [R. 38 at 128-29]. In response to the District Judge's inquiry into the conduct committed by Brown that made him guilty of count 2, Brown admitted that he distributed the drug that caused Strickler's serious bodily injury. [R. 38 at 133-35]. It is well-established precedent that a defendant is bound by the statements he makes in response to a district judge's scrupulous Rule 11 inquiry. *United States v. Todaro*, 982 F.2d 1025, 1029 (6th Cir. 1993). Accordingly, Brown's mere assertion of prosecutorial misconduct based on unreliable information and testing does not establish that his waiver was invalid, involuntary, or the product of Wright being ineffective as his counsel. Instead, Brown's assertion that the United States Prosecutor engaged in prosecutorial misconduct is really a challenge to the sufficiency of the evidence because it challenges the evidence the government used to indict Brown. In other words, following Brown's unsuccessful escape and denial of the point reduction by the Prosecution, Brown wants to simply avoid the binding sentence he bargained for by challenging the evidence the United States was going to use to build its case. Either way, this assertion is barred under the clear language of the plea agreement. [R. 28 at ¶ 8].

Any "attack on the sufficiency of the evidence that might have been produced at trial [is] clearly waived by [a] defendant's guilty plea." *United States v. Manni*, 810 F.2d 80, 84 (6th Cir. 1987). "[W]here the court has scrupulously followed the required procedures, the defendant is bound by his statement in response to the court's inquiry." *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977). "Solemn declarations in open court carry a strong presumption of veracity." *Id.* The

Rule 11 colloquy is designed to ensure that a defendant's plea is knowing and voluntary. *United States v. Goldberg*, 862 F.2d 101, 106 (6th Cir. 1988) (stating "Rule 11 of the FED. R. CRIM. P. has been carefully drafted and amended to the end that the guilty plea process be precise to make certain that a defendant pleading guilty understands the nature of his applicable constitutional rights, that his plea of guilty is voluntary with the full understanding of the nature of the crime charged and the consequences of his guilty plea and that there is a factual basis for the crime to which the plea is being offered"). Moreover, the Sixth Circuit upheld the District Court's finding that Brown's waiver was knowing and voluntary. [R. 66]. Therefore, Brown's claims of insufficient evidence and prosecutorial misconduct is without merit. *See United States v. Gibney*, 519 F.3d 301 (6th Cir. 2008) (stating that a valid waiver bars an appeal); *see also United States v. Harper*, 2008 WL 4829872 (E.D.KY Nov. 5, 2008) (rejecting § 2255 claim that defendant would never have pleaded guilty but for counsel's false promises where nothing in the record suggested that defendant misunderstood the scope of his waiver of his right to appeal and collaterally attack his conviction). Consequentially, Brown's assertions of prosecutorial misconduct and sufficiency of the evidence in ground two of his motion is barred by the express terms of the plea agreement.

Second, even if Brown could circumvent his express waiver, it is procedurally barred. A motion to vacate under Section 2255 does not substitute for a direct appeal. *Regalado v. United States*, 334 F.3d 520, 528 (6th Cir. 2003). The procedural default doctrine bars "claims that could have been raised on direct appeal[] but were not[,]" except for those claims of ineffective assistance of counsel. *Ray v. United States*, 721 F.3d 758, 761 (6th Cir. 2013); *Bousley v. United States*, 523 U.S. 614, 621 (1998). "In the case where the defendant has failed to assert his claims on direct appeal and thus has procedurally defaulted, in order to raise them in a § 2255 motion he must also show either that (1) he had good cause for his failure to raise such arguments and he would suffer

prejudice if unable to proceed, or (2) he is actually innocent." *Regalado*, 334 F.3d at 528. In other words, if a defendant fails to establish cause, then it is unnecessary for a court to determine if he was prejudiced by the alleged violation. *Bousley*, 523 U.S. at 623. Additionally, if a defendant cannot establish cause and actual prejudice for his procedural default, then he may still obtain review of a claim in a collateral proceeding if he can establish actual innocence. *Id.*

Brown concedes that he directly appealed to the Sixth Circuit, raising only the issue of whether the District Court erred when it denied his request to withdraw his guilty plea. [R. 69]; *see also Brown*, 752 F. App'x. at 309. However, Brown does not demonstrate good cause for his failure to challenge his sentence on direct appeal or assert that he is actually innocent of the crime charged. As described above, Brown pled guilty and did not otherwise challenge his sentence beyond the request to withdraw his guilty plea. [R. 38 at 133-35]; *Brown*, 752 F. App'x. at 315. Brown also admitted that he "is not seeking to take back his guilty plea to distribution under 21 U.S.C. § 841." [R. 69-1 at 425]. Instead, he asks that the court "order that he be resentenced to the lesser included offense of distribution under 21 USC § 841[] because the government does not have any evidence that would support an overdose enhancement." [*Id.*] Therefore, Brown's assertion of prosecutorial misconduct based on insufficient evidence in ground two of his motion to vacate is likewise procedurally defaulted.

In sum, Brown may not make challenges to the sufficiency of the Prosecution's evidence under ground two because he waived his right to do so under the plea agreement and procedurally defaulted. Therefore, this Court recommends that ground two of Brown's motion to vacate be denied as waived and procedurally defaulted.

## B.  Ineffective Assistance of Counsel

To prevail on ineffective assistance of counsel under Section 2255, Brown must satisfy two

essential elements: (1) deficient performance and (2) how "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984) (stating that "[u]nless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable"). First, to prove deficient performance, Brown must show that "counsel's representation fell below an objective standard of reasonableness." *Id.* at 687-88. In applying this test, reviewing courts must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonably professional assistance." *Id.* To show representation fell below an objective standard of reasonableness, the petitioner must articulate specific acts or omissions to show how counsel's performance fell "outside the wide range of professionally competent assistance." *Id.* at 690.

Second, Brown must also establish prejudice by showing that there is a reasonable probability that, but for counsel's unprofessional errors, the result of his proceedings would have been different. *Id.* at 694-95. "The likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 111-12 (2011) (citing *Strickland*, 466 U.S. at 696)). "When deciding ineffective-assistance claims, courts need not address both components of the [deficient performance and prejudice] inquiry 'if the defendant makes an insufficient showing on one.'" *Campbell v. United States*, 364 F.3d 727, 730 (6th Cir. 2004); *Strickland*, 466 U.S. at 697. Decisions that "might be considered sound trial strategy" do not constitute ineffective assistance of counsel. *Michel v. Louisiana*, 350 U.S. 91, 101 (1955). While trial counsel's tactical decisions are not completely immune from Sixth Amendment review, they must be particularly egregious before they will provide a basis for relief. *Martin v. Rose*, 744 F.2d 1245, 1249 (6th Cir. 1984). Further, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment."

*West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996) (quoting *Strickland*, 466 U.S. at 691). "Counsel is constitutionally ineffective only if performance below the professional standards caused the defendant to lose what he otherwise would probably have won." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992).

Brown's primary claim is that Wright's ineffective assistance rendered his guilty plea unknowing and involuntary. [R. 69-1]. Originally, Brown retained Wright as his private counsel, but the District Court subsequently granted Wright's motion to withdraw as counsel and appointed David J. Guarnieri pursuant to the Criminal Justice Act. [R. 33; R. 73-6]. Pursuant to Brown's first ground, he broadly alleges ineffective assistance of counsel before and during the plea negotiation process. [R. 69, 69-1]. To support this contention that he would not have taken the plea agreement but-for his counsel's ineffective assistance, Brown argues that Wright's actions met the *Strickland* two-part test by: (1) failing to investigate the alleged drug causing the victim's overdose; (2) failing to explain the elements of the offense to him; (3) failing to discuss and review the discovery with him; and (4) erroneously advising Brown to enter into the enhancement stipulation for serious bodily injury. [R. 69-1 at 412-21]. Under Brown's third ground, he also argues ineffective assistance of counsel because Wright failed to argue that Brown was not a Career Offender. [*Id.*]

### 1.  Brown's Guilty Plea was Knowing and Voluntary

First, Brown fails to show that Wright's alleged failure to investigate led to erroneous advice to enter into the plea agreement. Brown argues broadly that Wright failed to investigate the drug that caused the overdose and erroneously advised him to take the plea agreement. [R. 69-1]. Brown faults Wright for advising him to "avoid a sure life sentence by pleading guilty, so that the government would not file an 851 notice." [*Id.*] According to Brown, Wright's "failure to investigate cause[d] the attorney to advise petitioner to plead guilty to selling 'the drug' that

'caused' the victim to overdose, when the evidence showed the opposite." [*Id.*] Brown appears to argue that had Wright fully investigated into whether fentanyl was the "but-for" cause of the victim's overdose, this would have affected his decision to enter into a plea agreement. [*Id.*] Brown cites *Burrage v. United States*, 571 U.S. 204 (2014), stating that the Supreme Court held that the drug distributed by a defendant must be the but-for cause before receiving the sentencing enhancement for serious bodily injury. [*Id.*] In Brown's words, Wright's "failure to review the discovery coupled with the failure to investigate [led] directly to his erroneous legal advice, which [led] directly to [Brown] receiving a 40 year sentence due to a 'serious bodily injury enhancement' under 21 USC § 841(b)(1)(C) & USSC 2D1.1(a)(1)." [*Id.*] However, Wright's decision not to seek an additional medical examination resulted in no prejudice to Brown and did not alter his decision to enter into the plea agreement.

To the prejudicial prong, the decision of counsel to choose one strategy over another is "virtually unchallengeable." *Leonard v. Warden, Ohio Penitentiary*, 846 F.832, 849 (6th Cir. 2017) (quoting *Buell v. Mitchell*, 274 F.3d 337, 359 (6th Cir. 2001)). "Judicial scrutiny of counsel's performance must be highly deferential, and a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Knowles v. Mirzayance*, 556 U.S. 111, 124 (2009). To meet the *Strickland* standard, a defendant must show that counsel's strategy prejudiced him or her. *Hinkle v. Randle*, 271 F.3d 239, 245 (6th Cir. 2001) (stating that proving prejudice under *Strickland* involves an "exacting standard" of showing that, but for counsel's failure, there is a reasonable probability that the outcome would have been different). Specifically, a claim of counsel's failure to investigate "must allege with specificity what the investigation would have revealed and how it

would have altered the outcome." *United States v. Hassan*, 2014 5361942, at *5 (E.D. Mich. Oct. 21, 2014) (quoting *United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989). Mere speculation that an alternative strategy would have altered the judicial outcome is not sufficient. *Hodge v. Haeberlin*, 579 F.3d 627, 640 (6th Cir. 2009) (stating the defendant's "speculation that his testimony would have left a favorable impression with the jury does not demonstrate the required prejudice under *Strickland*"). Likewise, "[c]ounsel does not fall below [the *Strickland*] standard by failing to prevail when arguing a debatable point to the court. *Id.* at 644.

To show prejudice to his case, Brown analogizes to *United States v. Ewing*, 749 Fed.App'x 317 (6th Cir. 2018) to argue that the facts are "almost exactly the same situation." [R. 69-1]. The crux of Brown's argument is that, like *Ewing*, a gap existed that made it impossible to link the fentanyl sold to Strickler to her overdose. Brown argues that because Wright failed to investigate or review the discovery, he failed to discover that Brown was not responsible for the drugs that caused the victim's overdose. [*Id.*] Specifically, Brown argues that the government alleged that he sold the victim a combination of fentanyl and 6-Monoacetylmorphine ("6-MAM"), but the lack of 6-MAM shows that the victim did not take the drug that she claims she bought from Brown before she overdosed. [*Id.*] As evidence, Brown points to the report of the forensic laboratory examination which showed only fentanyl in the victim's system when she overdosed. [R. 69-2 at Exhibit C]. In other words, Brown argues that it was not his drugs in the victim's system at the time of her overdose. Although the United States disagrees on this conclusion, it argues correctly that Brown's argument is meritless. [R. 73 at 514].

In *Ewing*, the Sixth Circuit reversed a jury's verdict because there was "an unexplained gap in the evidence" between the drug the defendant sold the victim (heroin mixed with fentanyl) and the drug that appeared to have caused the victim's death (just fentanyl). 749 Fed.App'x at 329.

The Court stated that following the victim's death, there was neither heroin nor heroin metabolites in his blood. *Id.* Given the gap and "the lack of any evidence or testimony to explain" the absence of the drug, the Sixth Circuit held that no rational juror could have found, beyond a reasonable doubt, that the defendant's particular drug sale killed the victim, as opposed to a different sale after the fact. *Id.* at 330.

Here, there is no such "unexplainable gap in the evidence." Count two of the indictment charged Brown with distributing fentanyl which also caused the overdose. [R. 7]. The charge did not allege that the mixture distributed by Brown also contained 6-MAM, nor did the United States allege that it played a part in the victim's overdose. The lab tests verified that the victim had fentanyl in her system when she overdosed. [R. 69-2 at Exhibit C]. Moreover, unlike *Ewing*, Strickler lived and eventually named Brown as the supplier that led to her overdose. [R. 73-5]. More telling is how the police were able to corroborate this when the victim called Brown and he stated "every time I give you something big, you go missing for a few days, then I find out that you . . . OD'd or something." [R. 75-4]. Brown also stated that "[e]very time you come grab something big, I don't hear from you for 2 days, and then I find out, like, 'well, I gotta sneak around Ronnie,' because something happened." [*Id.*] Even after expressing his concerns about her latest overdose, Brown still sold Strickler more fentanyl. [*Id.*]

Brown's assertion of prejudice further fails because his mere speculation as to the drugs being different is unsupported by any independent investigation or evidence. *Hodge*, 579 F.3d at 640. In his motion to compel, Brown attempts to create a possibility of another drug dealer selling the victim fentanyl on the same day. [R. 79]. However, as the United States correctly indicates, Brown also excluded evidence of his call logs that similarly showed his substantial contacts with the victim. [R. 81, 81-2]. Again, "[t]he likelihood of a different result must be substantial, not just

conceivable." *Harrington v. Richter*, 562 U.S. 86, 111-12 (2011) (citing *Strickland*, 466 U.S. at 696)). Brown's claims that a jury may have agreed that a gap existed is mere speculation and falls short of any showing of prejudice. *Hodge*, 579 F.3d at 644; *see also United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1999) (holding that "[c]ounsel is constitutionally ineffective only if performance [fell] below professional standards [that] caused the defendant to lose what he otherwise probably would have won").

To the extent that Brown argues that Wright strongly advised him to take a plea deal to avoid the government filing an § 851 notice, the Court simply construes this as a lawyer providing full and frank advice to his client because Brown was actually facing potential mandatory life in prison. However, due to the plea agreement and Brown's voluntary choice to enter it, the United States withdrew its notice of intent to seek an enhanced statutory punishment. [R. 28]. Thus, Wright's advice to seek a plea deal to avoid a likely mandatory life sentence are afforded great deference as "sound trial strategy." Michel, 350 U.S. at 101. Therefore, it is recommended that Brown's claim of ineffective assistance of counsel be denied as it relates to Wright's decision not to hire an expert to investigate this case and erroneously advise him to seek a plea deal.

Second, Brown's assertions of ineffective assistance of counsel due to Wright's alleged failure to explain the elements of the offense and review discovery with him are unsupported by the record. Brown argues that Wright failed to review the discovery with him or explain the elements of the offense. [R. 69-1]. Under Brown's observations, he says that Wright relied on the Court's interpretation of the case that it was not a complex case to mean that the Court thought he was guilty. [*Id.*] Brown states that pursuant to *Smith v. United States*, 348 F.3d 545 (6th Cir. 2003), a defendant's attorney must review the charges with him by explaining the elements of the offense. [*Id.*]

In the context of a guilty plea, while the performance prong of *Strickland* remains the same, to establish prejudice, the petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). The Sixth Circuit has recognized that an attorney "has a clear obligation to fully inform [his] client of the available options." *Smith*, 348 F.3d at 552. In the plea context, this includes explaining "sentencing exposure the defendant will face as a consequence of exercising each of the options available." *Id.* at 553. Failure to do so violates the defendant's right to effective assistance of counsel. *Id.*

The record belies Brown's bald assertions of failure to explain the charges or review the discovery. In his affidavit, Wright stated that he reviewed the indictment and discovery with Brown on multiple occasions. [R. 73-6]. According to Wright, he advised Brown of the seriousness of the charges because of the charge of selling fentanyl to the victim that caused her serious bodily injury. [*Id.*] Wright attached evidence of his calendar to show that he had six video conference calls and two in-person meetings with Brown to discuss the elements of the offense and go over the discovery. [*Id.*] During the meetings, Wright states that he provided and discussed the evidence with Brown, explained the difference between his prior record and the federal charges pending, and explained why Brown was facing a lengthy term of incarceration due to the charge of serious bodily injury to the victim. [*Id.*] After these discussions, Wright stated that Brown stated that he understood the indictment and Federal guidelines and agreed to meet with the United States and the DEA to reduce his prison sentence. [*Id.*]

Wright's assertions are further corroborated by the record. For example, in his plea agreement, Brown acknowledged that he understood the plea agreement and Wright fully explained the agreement. [R. 28 at ¶ 14]. Brown also swore that he entered into the plea agreement

voluntarily. [*Id.*] More telling are the statements made by Brown at his rearraignment. [R. 38]. At his rearraignment, the District Judge verified with Wright that he had no problems communicating with Brown and that Brown understood the nature of his charges. [R. 38 at 114]. Brown further verified that he received a copy of the indictment and stated that he had an opportunity to review it and discuss it with Wright. [R. 38 at 114-15]. Brown then stated that he was able to discuss his case in general with Wright and that he was satisfied with the advice and representation he was given in this case. [R. 38 at 115].

Even if Wright had ignored his better judgment and argued against the evidence, Brown does not establish that this would have affected the outcome. *Hinkle v. Randle*, 271 F.3d 239, 345 (6th Cir. 2001) (stating that proving prejudice under *Strickland* involves an "exacting standard" of showing that, but for counsel's failure, there is a reasonable probability that the outcome would have been different). Brown fails to connect an alleged lack of discovery or discussion of the charges to his decision to plead guilty. *United States v. Walton*, 2014 WL 2004472, at 10-11 (E.D. Ky. May 15, 2014) (rejecting a failure to provide discovery under *Strickland*). In other words, Brown "does not indicate when he requested the discovery, how often he requested it, what the discovery materials contain, or why they would have influenced his decision to plead guilty." *United States v. Stewart*, 2011 WL 382206, at *3 (E.D. Ky. Jan. 4, 2011). Brown's self-serving statements on this topic fail under either *Strickland* prong. Brown merely suggests that Wright's failure to discuss the discovery with him led to his erroneous advice to plead guilty. [R. 69-1]. This does not specify exactly what Brown learned since his guilty plea that would have been material to his decision to enter the plea. Therefore, beyond Brown's conclusory assertions that he has been denied access to evidence favorable to his defense, there is no evidence in the record on which to find that Wright did not discuss the charges and discovery with him. *See Thomas v. United States*,

849 F.3d 669, 679 (6th Cir.) (finding that defendant's ineffective-assistance claim was waived where he failed to "articulate how [counsel's] actions specifically were deficient or how they specifically prejudiced the outcome of the case").

In sum, Brown does not establish deficient performance or prejudice under the allegations made in ground one of his motion to vacate. Accordingly, it is recommended that Brown's assertions of ineffective assistance of counsel be denied as it relates to explaining the elements and reviewing discovery.

### 2. Brown Fails to Show Prejudice Because he was not Sentenced as a Career Criminal

Brown's final assertion of ineffective assistance of counsel alleges that Wright failed "to investigate his prior convictions and show that [he] was not a career criminal under U.S.S.G. 4B1.1." [R. 69-1 at 423-24]. The United States argues that Brown was not sentenced as a Career Offender or an Armed Career Criminal. [R. 73 at 517]. According to the United States, the Presentence Investigation Report ("PSR") recognized that Brown would qualify as a Career Offender, but those guidelines were not applied because the other applicable offense level determined under Chapters II and II of the Guidelines were higher than those generated by the Career Offender guidelines. [*Id.*]; *See* [R. 51 at 239, ¶ 35].

The PSR states that Brown's guidelines were based on offense level from USSG § 2D1.1 and an enhancement for obstruction of justice pursuant to USSG § 3C1.1. [R. 51 at 238, 255]. Consequently, Brown's status as a Career Offender under the guidelines did not impact his sentence. In other words, contrary to his claim, Brown was not sentenced as a Career Offender. Therefore, this allegation of ineffective assistance of counsel is without merit and it is recommended that ground three be denied.

### C.  Brown's Discovery Motions

Brown is currently serving a 480-month term of imprisonment following his plea agreement on Counts 2 and 4 of the indictment for distribution of Fentanyl resulting in serious bodily injury and possession of a firearm by a convicted felon. [R. 48]. In addition to his motion to vacate under § 2255, Brown also seeks leave to conduct discovery. [R. 79]. Brown requests the United States of America to provide discovery material of Strickler's mobile phone and audio recordings of the phone records at Grayson County Detention Center. [R. 79 at 563]. Brown further requests that the United States subpoena text messages from Strickler's mobile phone. [R. 79 at 563-64]. Brown claims to need such materials to show that he did not cause Strickler to overdose on March 29, 2017, which would corroborate his ineffective assistance of counsel claims and claim of prosecutorial misconduct in his 28 U.S.C. § 2255. [R. 79 at 564]. The United States opposes the motion. [R. 81].

"A habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course." *Bracy v. Gramley*, 520 U.S. 899, 904 (1997). Pursuant to Rule 6(a) of the Rules Governing § 2255, the movant is required to show good cause before a judge may allow a party to conduct discovery. To show "good cause," the burden is on the petitioner to "present 'specific allegations'" that give the Court "'reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief." *United States v. Atkin*, 80 F.Supp.2d 779, 785 (N.D. Ohio Jan. 7, 2000) (citing *Lynott v. Story*, 929 F.2d 228, 232 (6th Cir. 1991); *see also Bracy*, 520 U.S at 908-09. Generalized or conclusory statements regarding the possibility of the existence of discoverable material will not be sufficient to establish the requisite good cause. *Williams v. Bagley*, 380 F.3d 932, 974 (6th Cir. 2004). The "district court does not abuse its discretion in denying a habeas petitioner's request for

discovery, where the request falls more in the category of a fishing expedition masquerading as discovery." *Burns v. Lafler*, 328 F.Supp.2d 711, 718 (E.D. Mich. July 26, 2004) (quoting *Stanford*, 266 F.3d at 460). If the requested discovery is merely cumulative or otherwise immaterial, the court will also not err in denying the petitioner's request for discovery. *Williams*, 380 F.3d at 976-77.

Brown does not meet his burden. Although Brown attaches the required requests for discovery, he cannot show good cause by setting out specific allegations that give the Court reason to believe that if the facts are fully developed as Brown anticipates, that he will be able to demonstrate that he is entitled to relief for ineffective assistance of counsel and prosecutorial misconduct. Brown broadly states that obtaining these records will show that it was the "Detroit Drug Dealer" who sold the drugs that caused her to overdose on March 29, 2017. [R. 79 at 564]. Brown seeks to call into question the trustworthiness of Strickler as a witness. In other words, he generally alleges that he believes discovery will support his ineffective assistance of counsel and prosecutorial misconduct claims by helping to prove his innocence in this matter. [R. 79 at 567]. However, as the United States indicated, Brown does not account for the twenty-three times he received text messages and phone calls from Strickler on March 28, 2017. [R. 81-2]. Nor does Brown explain the significance of the phone records from Grayson County Detention Center. [R. 79 at 563]. He instead generally requests discovery of the jail phone records without any indication as to how these records would "unquestionably lead to a cognizable claim for relief." *Keenan v. Bagley*, 262 F.Supp.2d 826, 838 (N.D. Ohio May 7, 2003).

Furthermore, as described above, Brown's claims for § 2255 are without merit. Subsection (a) of Rule 6 may be limited by the Court. *Harrison v. Nelson*, 394 U.S. 286, 295 (1969) (stating that the broad discovery provisions of the federal rules do not automatically apply in § 2255

proceedings). The Supreme Court explained that the existence of good cause will be established "where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief, [if so then] it is the duty of the court to provide the necessary facilities and procedures for an adequate inquiry." *Harrison*, 394 U.S. at 300. There are no factual issues in dispute, the resolution of which would aid Brown. As described above in detail, Brown voluntarily admitted guilt to the offense in both his plea agreement and in open court at his rearraignment. [R. 28, 38]. Therefore, it is recommended that Brown's motion to compel discovery be denied because Brown fails to meet his burden of good cause.

### D.  Brown's Evidentiary Hearing Request

Brown also seeks an evidentiary hearing on his Section 2255 motion to develop facts associated with his allegations of ineffective assistance of counsel. [R. 82]. Section 2255 requires a prompt hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); *see also Pola v. United States*, 778 F.3d 525, 532 (6th Cir. 2015). Defendant's burden in establishing that he is entitled to an evidentiary hearing is "relatively light." *Turner v. United States*, 183 F.3d 474, 477 (6th Cir. 1999). However, a "full blown evidentiary hearing" is not required in every case. *Smith v. United States*, 348 F.3d 545, 550-51 (6th Cir. 2003) (citing *Todaro*, 982 F.2d at 1030). "[N]o hearing is required if the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999) (internal quotations omitted). If a habeas petitioner presents a factual dispute, then "the habeas court must hold an evidentiary hearing to determine the truth of the petitioner's claims." *Huff v. United States*, 734 F.3d 600, 607 (6th Cir. 2013).

Here, Brown requests an evidentiary hearing to show that counsel's legal advice to plead guilty was erroneous. [R. 82 at 606]. However, an evidentiary hearing is not required in this situation because there are no factual disputes present and the record shows that Brown is not entitled to relief on his ineffective assistance of counsel claim. [R. 28, 38]. In Brown's reply, he conclusively states that if his former counsel would have provided him a copy of the actual text messages, he would not have taken the plea agreement. [R. 82 at 604, 606]. In Wright's affidavit, he stated that he instructed Brown of the seriousness of the charges and explained the indictment and the federal sentencing guidelines to him. [R. 73-6]. Wright also stated that Brown told him that he understood the indictment and agreed to meet with the United States and the DEA to help reduce his prison sentence. [*Id.*] Wright also stated that he provided Brown with the discovery and reviewed it with him. [*Id.*] This is corroborated by Wright's attached schedule of the meetings with Brown, his voluntary agreement to plead guilty, and his statements made in open court at his rearraignment. [R. 28, 38, 73-6]. Moreover, there appears to be no dispute that Brown received the call logs in discovery from Wright because he attached a copy of the call log the Government subpoenaed in his motion to compel discovery. [R. 79-1]. Thus, Brown's conclusory statement merely speculates that he may have declined the plea agreement if his attorney would have obtained the actual text messages, not just relying on the call logs provided by the Government. Therefore, the Court finds that no evidentiary hearing is needed to resolve this issue because there are no disputed issues of fact and recommends that his request be denied.

## IV.    CERTIFICATE OF APPEALABILITY

A Certificate of Appealability may issue where a movant made a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This standard requires a movant to demonstrate that "reasonable jurists would find that the district court's assessment of the

constitutional claims debatable or wrong." *Slack v. McDaniel*, 120 S. Ct. 1595, 1604 (2000) (stating that issuance of a Certificate of Appealability in the context of a habeas petition filed under 28 U.S.C. § 2254, which legal reasoning applies with equal force to motions to vacate brought pursuant to 28 U.S.C. § 2255); *see also Miller-El v. Cockrell*, 123 S. Ct. 1029, 1039-40 (2003). The reviewing court must indicate which specific issues satisfy the "substantial showing" requirement. 28 U.S.C. § 2253(c)(3); *Bradley v. Birkett*, 156 F. App'x. 771, 774 (6th Cir. 2005). For dismissals on procedural grounds, as to when a Certificate of Appealability to be issued, the movant must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 120 S. Ct. at 1604.

Here, Brown has not made a "substantial showing" as to any claimed denial of his rights. Moreover, the Court also believes that reasonable jurists would not find its determination on the merits debatable. Therefore, this Court recommends that the District Court deny a Certificate of Appealability.

## V.    RECOMMENDATION

Accordingly, having reviewed Brown's current Motion [R. 69] in accordance with Rule 10 of the Rules Governing Section 2255 Habeas Cases, IT IS RECOMMENDED that:

1.  Brown's motion to vacate his sentence under § 2255 [R. 69] be DISMISSED WITH PREJUDICE;

2.   Brown's motion to compel discovery [R. 79] be DENIED;

3.  Brown's motion for an evidentiary hearing [R. 82] is DENIED; and

4.  A Certificate of Appealability be DENIED as to all issues raised, should Brown so request.

\*\*\* \*\*\* \*\*\* \*\*\*

The parties are directed to 28 U.S.C. § 636(b)(1) for a review of appeal rights governing this Recommended Disposition. Particularized objections to this Recommended Disposition must be filed within fourteen days from the date of service thereof or further appeal is waived. *United States v. Campbell*, 261 F.3d 628, 632 (6th Cir. 2001); *Thomas v. Ann*, 728 F.2d 813, 815 (6th Cir. 1984). General objections or objections that require a judge's interpretation are insufficient to preserve the right to appeal. *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004); *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995). A party may file a response to another party's objections within fourteen days after being served with a copy thereof. 28 U.S.C. § 636(b)(1)(C); FED. R. CRIM. P. 59(b)(1).

Signed December 20, 2019.



Signed By:
*Edward B. Atkins*  
United States Magistrate Judge